1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                        * * *
                                          )
9   RAFAEL CERROS and ALEGRIA             )
    MUSICAL LLC,                          )          02:06-CV-00647-LRH-PAL
10                                        )
              Plaintiffs,                 )
11                                        )
     v.                                   )          ORDER
12                                        )
    NORTH LAS VEGAS POLICE                )
13  DEPARTMENT, CITY OF NORTH LAS         )
    VEGAS, BROAD ACRES SWAP MEET,         )
14  RECORDING INDUSTRY ASSOCIATION        )
    OF AMERICA, BOB OROZCO, DOES I-V,     )
15  ROES I-V, inclusive,                  )
                                          )
16            Defendants.                 )
                                          )
17  _____ )

18          Presently before the court are two motions to dismiss Plaintiffs Rafael Cerros ("Cerros")

19   and Alegria Musical LLC's (collectively, "Plaintiffs") First Amended Complaint.  The first Motion

20  to Dismiss (# 39[1]) was filed jointly by Defendants Recording Industry Association of America

21  ("RIAA") and Bob Orozco ("Orozco").  The second Motion to Dismiss (# 40) was filed by

22  Defendants City of North Las Vegas ("the City") and the North Las Vegas Police Department

23  ("NLVPD").  Plaintiffs responded to each of the defendants' motions (## 42, 43), and Defendants

24  replied (## 44, 45).

25  _____

26          [1]Refers to the court's docket number.

1    **I.      FACTUAL BACKGROUND**

2           Cerros is in the business of buying and selling compact disks.  (Pls.' First Am. Compl. (#

3    38) ¶ 2.)  On or about August 14, 2005, Cerros was selling compact disks at a swap meet owned

4    and operated by Broad Acres Swap Meet.  *Id.* ¶ 3.  Cerros alleges that North Las Vegas Police

5    Officers, accompanied by Defendant Orozco (an investigator from RIAA), approached the sales

6    booth, which was staffed by Cerros and run by Alegria, and arrested Plaintiff.  *Id.* ¶ 7.  Upon

7    Cerros's arrest, Orozco, acting on behalf of RIAA, began searching through Plaintiffs'

8    merchandise.  *Id.*  Cerros alleges he was handcuffed for more than two hours.  *Id.* ¶ 9.  In addition,

9    Plaintiffs argue Defendants did not have a search or arrest warrant.  *Id.* ¶¶ 10, 11.

10          On April 10, 2006, Cerros filed this action in the Clark County District Court alleging

11   various state law claims in addition to illegal search and seizure in violation of his Fourth

12   Amendment rights.  The action was removed to this court on May 25, 2006.  (Pet. for Removal (#

13   1).)  In response to Defendant Broad Acres Swap Meet's motion to dismiss, Plaintiff sought to

14   amend his complaint (# 30), which the court granted in part on August 8, 2006 (# 37).

15          The order partially granting Cerros leave to amend specifically prohibited Cerros from

16   amending his complaint to state a claim of false imprisonment or intentional infliction of emotional

17   distress against Orozco and RIAA.  (Aug. 10, 2007, Order (# 37) at 8-9.)  Further, because Cerros

18   failed to establish the elements of interference with contract and prospective economic advantage

19   with respect to all of the defendants, this court prohibited Cerros from claiming it in his amended

20   complaint.  *Id.* at 9.  Plaintiffs filed their first amended complaint on August 23, 2006.

21   **II.     Legal Standard**

22          In considering a motion to dismiss pursuant to Rule 12(b)(6), "all well-pleaded allegations

23   of material fact are taken as true and construed in a light most favorable to the non-moving party."

24   *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation

25   omitted).  However, a court does not necessarily assume the truth of legal conclusions merely

26                                                    2

1  because they are cast in the form of factual allegations in the plaintiff's complaint.  *Clegg v. Cult*

2  *Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).

3        There is a strong presumption against dismissing an action for failure to state a claim.

4  *Gillian v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is

5  not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in

6  support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*

7  *by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  A plaintiff's obligation to provide the grounds

8  of his entitlement to relief requires more than labels, conclusions, and a formulaic recitation of the

9  elements of the cause of action.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

10  "Factual allegations must be enough to raise a right to relief above the speculative level on the

11  assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. (internal

12  citations omitted).

13  **III.    Discussion**

14        For purposes of clarity, the court will address each motion to dismiss separately.

15        **A.  RIAA and Orozco's Motion to Dismiss**

16        RIAA and Orozco argue dismissal is proper with respect to Plaintiffs' fifth and eighth

17  causes of action because this court previously barred Plaintiffs from alleging these two claims in

18  the amended complaint.  (Defs. RIAA and Orozco's Mot. to Dismiss (# 39) at 4-5.)  As to

19  Plaintiffs' remaining claims, Defendants RIAA and Orozco assert Plaintiffs' first amended

20  complaint fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil

21  Procedure 12(b)(6).  *Id.* at 5.  The court will address each cause of action in turn.

22        **1.  Plaintiffs' Fifth and Eighth Causes of Action**

23        Plaintiffs' fifth cause of action asserts a claim for interference with contract and prospective

24  economic advantage.  Plaintiffs' eighth cause of action alleges intentional infliction of emotional

25  distress.  Defendants RIAA and Orozco argue that because this court's prior order prohibited

26                                                3

Plaintiffs from alleging these claims, Defendants should be awarded reasonable costs and fees incurred as a result of having to bring their motion to dismiss. *Id.* at 4-5.  In response, Plaintiffs acknowledge the impropriety of filing the two claims and state they inadvertently failed to delete the disallowed causes of action.  (Pls.' Resp. to Defs. RIAA and Orozco's Mot. to Dismiss (# 42) at 2.)

While RIAA and Orozco are correct that federal courts have the inherent power to award attorney's fees in response to "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (internal quotations and citations omitted), this court finds Plaintiffs did not act willfully or bring the causes of action in bad faith.  Rather, as indicated in Plaintiffs' response to the motion, their disobedience resulted from mere oversight, which they would have been willing to reconcile informally.  (Pls.' Resp. to Defs. RIAA and Orozco's Mot. to Dismiss (# 42) at 2.) Accordingly, Defendants RIAA and Orozco's request for attorney's fees and costs will be denied, and Plaintiffs' Fifth and Eighth causes of action will be dismissed.

**2. Defamation**

RIAA and Orozco argue Plaintiffs' allegations do not state a properly pled and cognizable claim for defamation because Plaintiffs merely "assert that the act of handcuffing Cerros communicated to those that were present that Cerros was a criminal and that Alegria was run by a criminal."  (Defs. RIAA and Orozco's Mot. to Dismiss (# 39) at 6.)  In response, Plaintiffs argue defamation has been appropriately alleged because the act of handcuffing Cerros, searching Plaintiffs' inventory, and questioning Cerros, all in view of customers, is sufficient to communicate Cerros had committed a crime.  (Pls.' Resp. to Defs. RIAA and Orozco's Mot. to Dismiss (# 42) at 3-4.)

"In order to establish a prima facie case of defamation, a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to

4

a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Simpson v. Mars Inc.*, 929 P.2d 966, 967 (Nev. 1997) (citing *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993)).  Words or conduct, or a combination thereof, can covey defamation.  *K-Mart Corp. v. Wash.*, 866 P.2d 274, 282 (Nev. 1993), *receded on other grounds by Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005).  Additionally, slander involving an imputation of a crime is considered defamation per se.  *Id.* ("There are cases that say when you cause one to be marched through a populated area in handcuffs, nothing needs to be said," for "that alone is the same as the allegation of the commission of a crime.").

While Plaintiffs appear to direct the allegations under their defamation claim against RIAA and Orozco, none of those allegations state RIAA or Orozco were the ones who published the communication to third parties.  Paragraph seven of Plaintiffs' first amended complaint alleges Orozco, accompanied by police officers, approached Plaintiffs' sales booth, and while the officers handcuffed Cerros, Orozco searched through Plaintiffs' merchandise.  (Pls.' First Am. Compl. (# 38).)  Plaintiffs allege "Cerros stood handcuffed in the corner of his booth–in full view of all shoppers and spectators–for over two hours."  *Id.* ¶ 9.  Additionally, Plaintiffs allege Orozco, while on the scene, "fired questions at [Cerros] concerning what are commonly known as bootleg recordings."  *Id.* ¶ 9.  Although Plaintiffs rely on the fact that Cerros was handcuffed in front of customers in supporting their defamation claim, it was the police officers who handcuffed Cerros, not RIAA or Orozco.  Further, this court finds Orozco's alleged questioning of Cerros and search of Plaintiffs' merchandise while Cerros was handcuffed is insufficient to satisfy the elements of defamation.  Therefore, viewing the allegations in a light most favorable to Plaintiffs, the court finds Plaintiffs have failed to assert a cause of action for defamation against RIAA and Orozco.  Plaintiffs' defamation claim will be dismissed.

///

///

5

### 3. Trespass to Chattels

Plaintiffs' third cause of action seeks damages for trespass to chattels.  Specifically, Plaintiffs allege, "Orozco, working in concert with the officers in the employ of the NLVPD, in rifling through Alegria's chattels caused the inventory to be disturbed and damaged Alegria's personal property necessitating expense to repair the damage." (Pls.' First Am. Compl. (# 38) ¶ 36.)

"When interpreting state law, federal courts are bound by decisions of the state's highest court." *Az. Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) (citing *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990).  Further, "[i]n the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id*.  The Nevada Supreme Court has often looked to the Restatement (Second) of Torts where such law is lacking. *See, e.g., Nittinger v. Holman*, 69 P.3d 688, 690, 692 (Nev. 2003) (citing Restatement (Second) of Torts § 909); *Simpson v. Mars*, 929 P.2d 966, 968 (Nev. 1997) (citing Restatement (Second) of Torts § 577(1)); *Valentine v. Pioneer Chlor Alkali Co., Inc.*, 864 P.2d 295, 297-98 (Nev. 1993) (citing Restatement (Second) of Torts §§ 519, 520).

Trespass to chattels may occur when a person intentionally uses or intermeddles with a chattel in the possession of another.  Restatement (Second) of Torts § 217 (1965).  A person will be liable to the possessor of the chattel only if: "(a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." *Id.* at § 218; *see also Intel Corp. v. Hamidi*, 71 P.3d 296, 302-303 (Cal. 2003).  "If such intermeddling with another's chattel is done without his consent and without any other privilege, the actor is subject to liability for harm thus caused to the chattel."  Restatement (Second) of Torts § 218 cmt. e (1965).

RIAA and Orozco maintain Plaintiffs' trespass to chattels claim fails on the grounds that

6

1  "rifling" Plaintiffs' merchandise is nothing more than a "typical customer interaction with

2  inventory." (Defs. RIAA and Orozco's Mot. to Dismiss (# 39) at 7-8.) Furthermore, Defendants

3  argue Plaintiffs failed to allege how Defendants interfered with Plaintiffs' possessory rights to their

4  personal property, and how "'rifling' through inventory caused any damage." *Id.* Thus, RIAA and

5  Orozco request this court dismiss Plaintiffs' third cause of action. *Id.*

6      After examining the complaint, the court finds Plaintiffs have sufficiently asserted a cause

7  of action for trespass to chattels. Paragraph eight of the complaint alleges Plaintiffs did not consent

8  to Defendants' search of the merchandise. (Pls.' First Am. Compl. (# 38) (stating the search was

9  "undertaken against the will and objection of the Plaintiffs").) Moreover, at Paragraph thirty-six,

10  Plaintiffs allege Orozco's "rifling through Alegria's chattels caused the inventory to be disturbed

11  and damaged." *Id.* Because the complaint asserts Plaintiffs did not consent to Orozco

12  intermeddling with Plaintiffs' merchandise, Plaintiffs' claims sufficiently allege Defendants'

13  interaction with the inventory did not constitute "typical customer interaction." Defendants'

14  alleged conduct was not aimed at a legitimate business transaction and their actions prevented other

15  customers from purchasing Plaintiffs' goods.

16      Plaintiffs' complaint also alleges Cerros was handcuffed for over two hours. (Pls.' First

17  Am. Compl. (# 38) ¶ 9.) Because the complaint clearly indicates he was restrained from selling his

18  product, pursuant to the Restatement (Second) of Torts § 218 (c), Plaintiffs adequately allege

19  Cerros was "deprived of use of the chattel for a substantial time." Further, the complaint asserts the

20  inventory was damaged, and as a result, the "chattel was impaired." Restatement (Second) of Torts

21  § 218 (b) (1965). Consequently, this court will deny RIAA and Orozco's motion to dismiss as to

22  this cause of action.

23  ///

24  ///

25  ///

26                                             7

**4. Trespass**

Plaintiffs' ninth cause of action alleges trespass. "[T]o sustain a trespass action, a property right must be shown to have been invaded." *Lied v. Clark County*, 579 P.2d 171, 173-174 (Nev. 1978) (citation omitted). RIAA and Orozco claim Plaintiffs fail to set forth a cognizable claim for trespass under Nevada law because Plaintiffs have not alleged a property right was invaded. (Defs. RIAA and Orozco's Mot. to Dismiss (# 39) at 8-9.) Instead, as Defendants argue, Plaintiffs allegations are directed to the actions that took place at the swap meet. *Id.*

While dated, Plaintiffs have nevertheless provided this court with Nevada authority that recognizes a leasehold interest as a property right. *See Adams v. Smith*, 9 P.2d 337, 342 (Nev. 1886) (holding "a leasehold interest assigned to defendant is an interest in lands"). Two Paragraphs in Plaintiffs' complaint sufficiently set forth allegations concerning Plaintiffs' leasehold interest: (1) Paragraph six alleges, in pertinent part, Alegria had a "recurring lease/license" for space at the events put on by Broad Acres Swap Meet; and (2) Paragraph eight alleges the events at issue "occurred on property for which Plaintiffs were exclusive tenants/licensees." (Pls.' First Am. Compl. (# 38).) Since Plaintiffs' complaint asserts the existence of a lease and an invasion thereof, Plaintiffs have sufficiently plead a claim for trespass, and RIAA and Orozco's motion to dismiss Plaintiffs' ninth cause of action will be denied.

**5. Violation of 42 U.S.C. § 1983**

Plaintiffs' fourth cause of action alleges a violation under 42 U.S.C. § 1983. RIAA and Orozco argue this claim should be dismissed because Plaintiffs have failed to allege Defendants were "acting under the color of state law." (Defs. RIAA and Orozoco's Mot. to Dismiss (# 39) at 9.) In order to prevail in a § 1983 action, a plaintiff must demonstrate two elements: (1) the complainant has been deprived of a right "secured by the Constitution and the laws" of the United States, and (2) the action complained of was committed by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-57 (1978); *Adickes v. S.H. Kress & Co.*, 398 U.S.

1    144, 150 (1970).

2    Even though § 1983 actions generally do not apply to private actors, a private party can be

3    liable if they are a "willful participant in joint action with the State or its agents.'" *Kirtley v.*

4    *Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).

5    The question is whether the private party is "sufficiently connected with the clear state action" to

6    have proximately caused the acts to occur within the meaning of § 1983.  *King v. Massarweh*, 782

7    F.2d 825, 828-29 (9th Cir. 1986) (citing *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355

8    (9th Cir. 1981)).  "[A]bsent some showing that a private party had some control over state officials'

9    decision [to commit the challenged act], the private party did not proximately cause the injuries

10   stemming from [the act]."  *Id.* at 829 (citation omitted).

11   RIAA and Orozco have not specified any specific constitutional violation to which they are

12   seeking relief under § 1983.  Looking at the allegations in the complaint in the light most favorable

13   to Plaintiffs, Plaintiffs appear to base their § 1983 action on violations of the Fourth Amendment.

14   *I.   Search in Violation of the Fourth Amendment*

15   In their complaint, Plaintiffs claim RIAA and Orozco's search of Alegria's property

16   violated Plaintiffs' right against unreasonable searches pursuant to the Fourth Amendment.  The

17   question is whether RIAA and Orozco were acting under the color of state law when Orozco

18   conducted the search of Plaintiffs' property.  Upon review of the complaint and relevant law, this

19   court finds Plaintiffs have sufficiently alleged Defendants were acting under the color of state law.

20   In determining whether a person is subject to suit under § 1983 for an alleged unreasonable

21   search, the court must ask whether "the alleged infringement of federal rights [is] fairly attributable

22   to the [government]?"  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.

23   1999) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)).

24   If the state has "so far insulated itself into a position of interdependence with the private [actor] that

25   it must be recognized as a joint participant in the challenged activity," the parties will be deemed

26                                                              9

"joint actors." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (citing *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995)).

Plaintiffs complaint sets forth allegations that Defendants did not have a search warrant and "there were not exigent circumstances giving rise to a basis for search without warrant." (Pls. First Am. Compl. (# 38) ¶¶ 10, 12.)  Further, Plaintiffs allege the act of handcuffing Cerros was "undertaken for the obvious and patent purpose of allowing Orozco to undertake the search," (Pls.' First Am. Compl. (# 38) ¶ 40), in order to "assist Orozco and [RIAA]." *Id.* ¶ 9.  Plaintiffs claim the police officers "acted to further the goals of Orozco and RIAA, and were working with Orozco at the time." *Id.* ¶ 28.  These allegations are sufficient to indicate RIAA, Orozco, and the police officers were joint actors in conducting the search.  And, while it was Orozco who actually searched Plaintiffs' inventory, the search was allegedly facilitated by the participating officers.  Such allegations are adequate to state a claim for unreasonable search in violation of the Fourth Amendment.  Thus, this court will deny Defendants' motion to dismiss Plaintiffs' § 1983 claim pertaining to Defendants' search of Plaintiffs' property.

### ii.  Seizure in Violation of the Fourth Amendment

Plaintiffs additionally claim Defendants violated their constitutional rights by alleging that absent a *Terry* stop, exigent circumstances, or a warrant, the seizure of an individual violates the protections against unreasonable seizure afforded by the Fourth Amendment.  (Pls.' First Am. Compl. (# 38) ¶ 39.)  In determining whether the seizure of an individual violates the Fourth Amendment, the court will look to whether the private party is acting with sufficient connection to the clear state action.  *King*, 782 F.2d at 828-29.  Here, unless there is some showing RIAA and Orozco had some control over the police officers' decision to arrest Cerros, it will not be held that RIAA and Orozco proximately caused the alleged unreasonable seizure.  *See id.*

Plaintiffs complain, "[t]he actions of handcuffing Cerros were undertaken with the sanction and direction of Orozco, and correlatively . . . [RIAA] . . ." (Plfs.' First Am. Compl. (# 38) ¶ 54.)

10

1    Furthermore, the complaint alleges that even though it was the police officers who handcuffed

2    Cerros, the act of handcuffing Cerros was "undertaken for the obvious and patent purpose of

3    allowing Orozco to undertake the search" in furtherance of Defendants' purposes and goals.  *Id.* ¶

4    40.  While Plaintiffs allege the police officers handcuffed Cerros under the approval and direction

5    of Orozco and RIAA in Paragraph fifty-four of their complaint, in viewing at the complaint as a

6    whole, the allegation is sufficient to assert RIAA and Orozco had some control over the police

7    officers' decision to act.  Therefore, this court finds Plaintiffs stated a claim against RIAA and

8    Orozco for unlawful seizure.  For this reason, RIAA and Orozco's motion to dismiss with respect

9    to Plaintiffs' unlawful seizure claim will be denied.

10           **6.  Conspiracy**

11           Plaintiffs' sixth cause of action asserts a claim for civil conspiracy.  Civil conspiracy

12   "consists of a combination of two or more persons who, by some concerted action, intend to

13   accomplish an unlawful objective for the purpose of harming another, and damage results from the

14   act or acts."  *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251,

15   1256 (Nev. 1998) (citations omitted).  RIAA and Orozco argue that, according to Nevada law,

16   Plaintiffs' sixth cause of action should be dismissed because the complaint is lacking an allegation

17   that Defendants "intended to accomplish an unlawful objective in concert with the [NLVPD]."

18   (Defs. RIAA and Orozco's Mot. to Dismiss (# 39) at 10-11.)  Moreover, Defendants maintain that

19   by labeling Defendants' conduct as "illegal and known to be illegal," Plaintiffs complaint is

20   conclusory.  *Id.*

21           After examining the complaint, this court finds Plaintiffs satisfactorily allege a claim for

22   civil conspiracy.  Plaintiffs' complaint alleges RIAA and Orozco's conduct was unlawful.  The

23   allegation in Paragraph forty-eight states, "Orozco, working for RIAA, and the police defendants

24   *agreed* to *seize, imprison,* and *batter* Cerros and *rifle* the products of Alegria *before* Cerros was

25   approached and handcuffed and before the product of Alegria was rifled."  (Pls.' First Am. Compl.

26                                              11

(# 38) ¶ 48) (emphasis added.)  Moreover, Plaintiffs have thus far sufficiently alleged various

causes of action against Defendants.  These allegations, considered as a whole, sufficiently claim

that the Defendants (more than two), agreed (acting in concert) and intended to act in an unlawful

manner towards Plaintiffs (through defamation, trespass to chattels, trespass, and unlawfully

searching Plaintiffs' property).  In light of these allegations, this court will deny RIAA and

Orozco's motion to dismiss concerning this claim.

### 7.  Battery

Plaintiffs' seventh cause of action asserts a claim for battery.  RIAA and Orozco argue

Plaintiffs' battery claim should be dismissed because the complaint does not allege "Defendant

RIAA or Defendant Orozco 'made an intentional, unlawful and harmful contact with [Cerros]."

(Defs. RIAA and Orozco's Mot. to Dismiss (# 38) at 11-12.)  Plaintiffs agree Defendants did not

"physically lay hands upon Mr. Cerros."  (Pls.' Resp. Defs. RIAA and Orozco's Mot. to Dismiss (#

42) at 8.)

For a viable battery claim, a plaintiff must show: (1) the actor intended to cause harmful or

offensive contact, and (2) offensive contact occurred.  Restatement (Second) of Torts §§ 13, 18

(1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1270 (D. Nev. 2001).  In an action for battery, the

Nevada Supreme Court has stated that "not only the actual assailant but also all others who aided,

abetted or encouraged the wrongdoer are liable with him to an injured party."  *Johnson v. Fong*,

147 P.2d 884, 886 (Nev. 1944); *see also Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 348

(Alaska 1982); *Ramirez v. Chavez*, 226 P.2d 143, 146 (Ariz. 1951); *Tauscher Doernbecher Mfg.

Co.*, 56 P.2d 318, 322 (Or. 1936).  While the Nevada Supreme Court has not proscribed what

constitutes aiding or abetting in the context of battery, other courts have.  The court in *Ramirez v.

Chavez*, for example, defined aiding and abetting, as follows:

> Aid and abet means simply to encourage, counsel, advise or assist
> in the commission of an act. The words comprehend all assistance
> rendered by acts or words of encouragement or support or presence
> actual or constructive, to render assistance should it become necessary.

> It means to assent to an act; to lend to it countenance and approval, either by an active participation in it or by in some manner advising or encouraging it.

226 P.2d 143, 146 (Ariz. 1951).

Plaintiffs allege the police officers handcuffed Cerros without an arrest warrant.  (Pls.' First Am. Compl. (# 38) ¶ 11.)  Plaintiffs complaint also states, "[t]he actions of handcuffing Cerros were undertaken with the sanction and direction of Orozco, and correlatively, the employer of Orozco, RIAA, and said actions were malicious and opressive [sic]."  *Id.* ¶ 54.  Because Plaintiffs allege the handcuffing was unlawful and that it was done with the approval and direction of RIAA and Orozco, Plaintiffs have sufficiently stated a claim for battery.  Defendants motion to dismiss concerning Plaintiffs' seventh cause of action will be denied.

**B.  The City and NLVPD's Motion to Dismiss**

The City and NLVPD move to dismiss NLVPD from the case, arguing the police department is not a separate legal entity subject to suit under Nevada law.  (Defs. City and NLVPD's Mot. to Dismiss (# 40) at 3.)  In addition, the City asserts Plaintiffs have failed to allege facts establishing municipal liability under 42 U.S.C. § 1983.  *Id.* at 4.  Alternatively, the City argues it is immune from Plaintiffs' state law claims, in accordance with Nevada Revised Statute Section 41.032.  *Id.* at 5-7.  The City joins in Defendants RIAA and Orozco's motion to dismiss regarding the wrongfully included claims and Plaintiffs' causes of action under conspiracy and trespass.  *Id.* at 7.  The court will address each argument separately.

**1.    NLVPD's Capacity to be Sued**

The City and NLVPD argue that, under Nevada law, NLVPD is a public agency, indistinguishable from the state, and is not authorized by statute to sue or be sued.  (Defs. City and NLVPD's Mot. to Dismiss (# 40) at 3-4.)  Therefore, Defendants assert the City and NLVPD argue NLVPD must be dismissed from this case.  *Id.*

In *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978), the Supreme

1  Court established that municipalities can be sued under § 1983 in certain circumstances.  However,

2  the Ninth Circuit has held that pursuant to Federal Rule of Civil Procedure 17(b), state law

3  determines the issue of whether a department of a municipality may sue or be sued.  *See, e.g., Streit*

4  *v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001); *Shaw v. State of California Dep't of*

5  *Alcoholic Beverages Control*, 788 F.2d 600, 604 (9th Cir. 1986).  NLVPD is a department of the

6  City and, under Nevada law, "[i]n the absence of statutory authorization, a department of the

7  municipal government may not, in the departmental name, sue or be sued."  *Wayment v. Holmes*,

8  912 P.2d 816, 819 (Nev. 1996) (citing 64 C.J.S. *Municipal Corporations* § 2195 (1950)); *see also*

9  *Schenieder v. Elko County Sheriff's Dept.*, 17 F. Supp. 2d 1162, 1165 (D. Nev. 1998) (finding

10  "under Nevada law, the Sheriff's Department lacks the capacity to be sued").

11          The parties have not identified any statutory authority that permits NLVPD to be sued, and

12  the court is unaware of any such authority.  Thus, Nevada does not grant authorization of a police

13  department to sue or be sued.  NLVPD will be dismissed as a party from this case.

14                    **2.      Violation of 42 U.S.C. § 1983**

15          Plaintiffs' complaint asserts a cause of action pursuant to 42 U.S.C. § 1983 for an alleged

16  infringement of Plaintiffs' Fourth Amendment rights.  The City and NLVPD argue Plaintiffs failed

17  to allege municipal liability as required for a viable § 1983 claim.  (Defs. City and NLVPD's Mot.

18  to Dismiss (# 40) at 4.)  Upon review of the complaint and the relevant law, the court finds

19  Plaintiffs' complaint is sufficient in alleging municipal liability.

20          Municipalities, under 42 U.S.C. § 1983, are "persons" for liability purposes where "action

21  pursuant to official municipal policy of some nature cause[s] a constitutional tort."  *Monell*, 436

22  U.S. at 691.  In addition, for an actionable claim against a municipality under § 1983, it must be the

23  municipality itself that causes the constitutional deprivation.  *Id.* ("A city may not be held

24  vicariously liable for the unconstitutional acts of its employees under the theory of respondeat

25  superior.").  Thus, the plaintiff must prove: (1) a city employee committed the alleged

26                                                                14

constitutional violation, (2) the violation occurred pursuant to a formal governmental policy or a longstanding practice or custom, and (3) the policy or custom constitutes the standard operating procedure of the local governmental entity. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). The policy or custom alleged must be the "moving force behind the constitutional violations." *Maybe v. Sane Bernardino County, Dep't of Pub. Soc. Serv.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (citations omitted).

Federal courts may not apply a heightened pleading standard in civil rights cases alleging municipal liability under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). The Ninth Circuit has established that in determining a motion to dismiss for failure to state a claim, it is sufficient for the plaintiff to generally allege that there is a municipal policy under § 1983, "'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986)).

Paragraph twenty of Plaintiffs' complaint alleges, "[t]he acts of police officers on the scene were, on information and belief . . . undertaken in accord within [sic] the policies and procedures of the North Las Vegas Police Department and in accord with training given such officers." (Pls.' First Am. Compl. (# 38).) Because a department of the municipality may not be sued in the departmental name, *Wayment*, 912 P.2d at 819, this court will construe Plaintiffs' allegation in Paragraph twenty to be an allegation against the City. And, pursuant to *Karim-Pahani*, 839 F.2d at 624, Plaintiffs' allegation based on information and belief is sufficient to survive a motion to dismiss. Hence, Defendants' motion to dismiss Plaintiffs' § 1983 claim will be denied.

///

///

///

15

1

        **3.  Discretionary Immunity**

2          As discussed in Section III(B)(2) of this order, Plaintiffs' complaint alleges Defendants'

3   search and seizure was unlawful and in violation of Plaintiffs' constitutional rights.  In response,

4   Defendants urge this court to dismiss Plaintiffs' state law claims on the basis of discretionary

5   immunity pursuant to Nevada Revised Statute Section 42.032.  (Defs. City and NLVPD's Mot. to

6   Dismiss (# 40) at 5.)

7          At this stage in the proceedings, it is unclear whether the City is entitled to discretionary

8   immunity.  A city may not be held vicariously liable for the unconstitutional acts of its employees.

9   *Monell v. Dep't of Soc. Serv. Of City of New York*, 436 U.S. 658, 691 (1978).  Thus, the City will

10  only be liable if there is a custom and policy in place that encourages constitutional violations and

11  that policy is the standard operating procedure of NLVPD.  *See Gillette v. Delmore*, 979 F.2s 1342,

12  1347 (9th Cir. 1992).  Here, Plaintiffs allege such a custom and policy.  (Pls.' First Am. Compl. (#

13  38) ¶ 20 ("[T]he acts of the police officers on the scene were, on information and belief . . .

14  undertaken in accord within [sic] the policies and procedures of [NLVPD] and in accord with

15  training given such officers.") .)

16         Since discovery has yet to commence, there is no evidence as to the alleged custom and

17  practice of NLVPD.  However, to the extent the City has enacted a custom or policy, it is unlikely

18  that custom or policy could be considered discretionary as it is, by definition, a custom or policy.

19  Nevertheless, the conduct of the city must first be established in order to determine whether the

20  City can avail itself to the immunity provided in Section 41.032 of the Nevada Revised Statutes.

21  Because the exact conduct of the City is unknown at this point, the court cannot determine whether

22  the City is entitled to discretionary immunity.

23         Additionally, several police officers are alleged to have been involved in the search and

24  seizure of Plaintiffs and their property.  Because Plaintiffs have not listed the names of those

25  individual police officers, the court is unable to establish which officers participated in what

26

                                          16

1   actions for the purposes of determining Defendants' discretionary immunity arguments.  The court

2   therefore denies Defendants' motion to dismiss Plaintiffs' state law claims based on discretionary

3   immunity.

4                        **4.   Plaintiffs' Fifth and Eighth Causes of Action**

5          Like Defendants RIAA and Orozco, the City and NLVPD move for reasonable attorney's

6   fees and costs incurred as a result of bringing their motion to dismiss.  (Defs. City and NLVPD's

7   Mot. to Dismiss (# 40) at 7.)  As previously discussed in Section III(A)(1) of this order, Plaintiffs

8   acknowledge the claims improperly included in their amended complaint were the result of

9   oversight.  Thus, the court finds Plaintiffs did not bring the causes of action in bad faith and will

10  deny Defendants' request for attorney's fees and costs.

11                       **5.   Conspiracy and Trespass**

12         The City and NLVPD join in Defendants RIAA and Orozco's motion seeking to dismiss

13  Plaintiffs' causes of action for conspiracy and trespass.  (Defs. City and NLVPD's Mot. to Dismiss

14  (# 40) at 7.)  As indicated in Section III(B)(3), Defendants maintain that the police officers and the

15  City are immune from Plaintiffs' claims under discretionary immunity.  *Id.* at 5.  However,

16  Plaintiffs' complaint sets forth allegations directed towards "Doe" police officers, who are yet to be

17  named.  Until the identities of the defendant police officers are known, it is unclear whether the

18  officers would be immune from Plaintiffs' claims of conspiracy and trespass.  Accordingly, the

19  court finds the City's motion premature as to these claims and the court will deny the motion to

20  dismiss in these respects.

21         IT IS THEREFORE ORDERED that RIAA and Orozco's Motion to Dismiss Plaintiffs'

22  First Amended Complaint (# 39) is hereby GRANTED in part and DENIED in part.  The motion is

23  granted with respect to Plaintiffs' claims for interference with contract and prospective economic

24  advantage, intentional infliction of emotional distress, and defamation.  The motion is DENIED in

25  all other respects.

26

1    IT IS FURTHER ORDERED that the City and NLVPD's Motion to Dismiss Plaintiffs'

2   First Amended Complaint (# 40) is hereby GRANTED in part and DENIED in part.  The motion is

3   granted with respect to dismissing NLVPD as a party to this case and Plaintiffs' claims for

4   interference with contract and prospective economic advantage and intentional infliction of

5   emotional distress.  The motion is DENIED in all other respects.

6    IT IS SO ORDERED.

7    DATED this 28th day of February, 2008.

8

9

10

11   _____
     LARRY R. HICKS
12   UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26